at all, or arguments not to exceed 15 minutes per side. Mr. Stephan Goodwin for the appellate. Chief Judge Cook, and may it please the Court, I'm Steve Goodwin, attorney for the appellate, Illinois Central Railroad Company, and I would like to reserve five minutes for rebuttal. This case was remanded back to the District Court by this Court to resolve the critically important issue whether Section 306 of the Railroad Revitalization and Regulatory Reform Act of 1976 prohibits states from imposing a sales tax on the diesel fuel used by railroads to run their locomotives, one of their largest operating expenses, while exempting the railroad's principal competitors in Tennessee, which is obviously the motor carriers. The Supreme Court and the two CSX cases out of Alabama have affirmed what's at issue in this case as well. It's no longer a matter of discrimination. These taxes have a discriminatory effect. There is facial discrimination when you tax the railroads and you're not taxing the motor carriers. That's been established. What hasn't been established, and what this case went back for, was the state having the burden to show sufficient justification for that taxation. And the sole justification here, this case comes down to one justification only. That is being offered. That is being offered in this case. That's correct. There might be others in some cases, but not in this case. The sole justification in this case is that the highway user fuel tax or the motor fuel tax that's imposed on the truckers is, quote, to use the Supreme Court's phrase, roughly equivalent to the imposition of the Tennessee sales tax as it is imposed on the railroads, on their diesel fuel. And it's important to appreciate the posture that this case comes to this court with. This was on summary judgments. And after remand by this court for further proceedings, quote, in light of- The lower court, I mean, in the original opinion, Judge Sharp, and this might have driven him from the bench, huh? Might have been your case, said that, found it was a rough equivalent. He did the math and said, eh, looks pretty good. And our court said, not good enough, right? That's correct. Here we are. It goes back because the so-called rough equivalency was already in the record. But this court sent it back anyway to consider the facts in view of CSX T2. And what the district court did was essentially grant summary judgment on an affirmative defense, which is really what the justification defense is. We have a facially discriminatory tax. The defense is- Could that ever be correct? Could it ever be correct to grant summary judgment on an affirmative defense? I suppose it could. Why is this not correct? It's not correct. And let me get to that first. All right. Why was summary judgment not correct in this case? Because if you adopt the state's view of the test, and we're going to get into what we think the test ought to be with the compensatory tax doctrine. We'll do that rather soon. But let's take their test, which is what Professor Hellerstein, I think, correctly criticizes as the dollar equivalency test, the financial burden test, that, well, they're not burdened more than the trucks are with this tax. The statement of fact that we submitted through the affidavit of Mr. Blair, which had to be accepted at the summary judgment stage, this was a Rule 56 summary judgment, said for calendar years 2007 through 2013 and the first half of 2014, if Illinois Central had paid a tax based on consumption of diesel fuel in Tennessee, which is how the trucks are taxed, rather than a sales tax on fuel purchased in Tennessee, which is how the railroads are taxed, Illinois Central would have paid significantly less in taxes on their diesel fuel. So that takes care of their summary judgment. But I'd like to tell you why we were entitled to summary judgment, under the correct legal standard. Help us with that. I mean, the remedy or the disposition you seek today is summary judgment in your favor. It would be, yes. If you use the correct legal analysis, which the district court did. Okay. We keep wanting you to get to that. All right. Here's the correct legal analysis. I mean, we have it in your brief, but if you change that, let us know. I haven't changed it. The correct legal analysis is the compensatory tax doctrine. Because think of this, Judge Cook. They're arguing that it is easier for the state to defend a facially discriminatory tax against a statutory prescription of discriminatory taxes by Congress. It's easier for the state to defend that than if this were a Commerce Clause litigation under the Constitution. I'm struggling with that analogy, because it seems to me that what the court said in CSX 2 was not, you shall use the compensatory tax doctrine in making your evaluation. It didn't say that at all. It had, I think, either a sentence or two sentences that referenced Greg dying and then suggested that and referenced the compensatory tax doctrine. But the court very easily could have said in that case, it's the compensatory tax doctrine, use it and apply it. But the court didn't do that. The court said, used the phrase, roughly equivalent. So where is your authority for saying that the Supreme Court failed to direct us to use the compensatory tax doctrine, used a different linguistic version of it, but meant that we were really supposed to use that doctrine? Well, two things, Judge Stranch. First, you look at the combination of the three things they did say. They said not only, look at our dormant Commerce Clause jurisprudence. They not only referenced Greg dying company, and they not only said more than once, it's a roughly equivalent test. All those three things are the compensatory tax doctrine. They don't always say, use the compensatory tax doctrine when they are deciding Commerce Clause cases. The term they use, as Professor Hellestine points out, is roughly equivalent. The rough equivalence goes to, are these taxes compensatory? And that's what the compensatory tax doctrine looks at. Even though the term rough equivalent seems to quarrel with the compensatory tax doctrine that talks about having exacting comparisons, right, of same type and effect, right? And rough seems to be peculiar. Rough equivalent sounds like, eh, right? It is an exacting test, and it should be, because we're talking about a facially discriminatory tax. So if this court accepts your argument, and grant summary judgment, I think, is your point, your reason, your best reason for saying we have no choice, we set up that your expert says, Blair says, you would have paid more or less, you would have gotten to pay less. What else? The expert says it. Not too fond a point on this. I raised the Blair affidavit to refute their summary judgment under their test. We don't think that's the test. We don't think this is a rate case. This is not a take out your calculator and contrive two rates. That's not what happens under any analysis. If you don't want to call it the compensatory tax doctrine, you've got to call it something, as Professor Hellerstein points out. There has to be some way to determine if these taxes, in fact, are discriminatory. And it's not a label. The Supreme Court used the term rough equivalence, which is the term they use in their compensatory tax doctrine. But you have to use some type of a test, more than what the district court did here. And we submit that the only test out there, the only test that comes from the Supreme Court or any other court, when you're taking two independent taxes, as we're doing here, not related, two independent taxes, and you're determining are they roughly equivalent in substance, not just in form. Mr. Goodwin, let me ask you a question. I'm having trouble figuring out exactly how to articulate this, but it's been bothering me in this case. You've got these two tax systems. And if, in turn, what somebody pays is roughly equivalent, then the discrimination is constitutional, as I understand it. Is there a way for the state to know, or the railroads to know, in advance at the beginning of the year, whether by the end of the year, truckers and railroads will have paid roughly the same amount, given that the price of fuel changes during the course of the year? Or is it always a system, particularly if we're in a volatile period where the costs go up and down, where you have to wait until the end of the year and then see how it turned out to find out whether the Constitution is violated or not? Judge McKee, you've just put your finger on why these are not roughly equivalent taxes. That's one of the main reasons why. The rates are totally independent of what's being taxed. Instead of telling me it's a great question, just answer the question if you would, please. I don't know there's any way to know it at the front end. So do you think that Congress and the Supreme Court had in mind some sort of a system then where you really won't know whether you violated the Constitution until you're at the end of the year? That just logically doesn't make sense. No, not at all. What Congress had in mind is, in sweeping terms, as Justice Scalia calls it, under this section of the Act, prohibits discrimination. The Supreme Court has told us, no longer at issue, that these are facially discriminatory taxes. We know that at the beginning of the year, Judge McKee. We know that at the beginning of the year because they are taxable. But we don't know whether they will have turned out to be roughly equivalent at the end of the year. Well, that's why the test has to be something more than the rate. Your focus is on the test that answers Judge McKee's question, is you don't test it that way about dollars and dollars. So I'm giving you that tip, but you need to fully answer that for Judge McKee. Your time is almost up. Please answer that. Why is his question answered by the test? Well, it's because the rate, if you use the compensatory tax doctrine, the rate is only one of the three factors, which is the only one they argue here. And you're right. You will not know at the front, if you use this contrived rate analysis, and remember it's contrived because you're converting a tax on purchase as a percentage tax to a cents per gallon tax, which is oblivious to the cost of the fuel. One of the reasons that you say that the test would lead you to where you want to be here is your emphasis on how the proceeds are used. But doesn't BNSF just completely obliterate that argument? Our case does not depend solely on how the proceeds are used because this tax ---- Can it even depend on that in light of that case law? Well, it can. And this is why being in Tennessee is not applicable here. Well, you can prepare the answer for that question. During my rebuttal? Yes, please. Thank you. Thank you. We appreciate your argument. Judge Cook, may it please the Court, my name is Talmadge Watts. I represent the Tennessee Department of Revenue. Mr. Watts, while you're composing what you want to say next, I'll ask you a question. You paused. It's your fault. What I thought Mr. Goodwin was going to say is that you can't predict whether the tax will have turned out to be roughly equivalent at the beginning of the year, and that's why the approach that Judge Sharp used was incorrect in this case. What he should have done is at least used the compensatory tax doctrine as a guide. That's what I thought he was going to say, and I think that's what his brief says. So from your perspective on the part of the state, you're advocating that Sharp was right. You just do this mathematical calculation. But you can't really do it until the end of the year, can you? You can, and the reason ---- Can or cannot? Can.  I can't tell what you're saying. You can handle the situation. So you can know in advance, even though you don't know what the cost of the fuel will be during the year, whether by the end of the year it will or will not have been roughly equivalent? Is that what you're saying? Not exactly. In tax administration, there are always credits that can be claimed. If somebody pays a little too much in the past year, they can take a credit for it the next year. The other point in this case is that the railroads have a direct pay permit. Even if we were to make this determination on a purchase-by-purchase basis, comparing a 7% of the purchase price to a $0.17 per gallon, the remedy could easily be, even if it was a daily determination of disparity, the railroads could always pay the lesser of 7% of the purchase price, or $0.17 per gallon. Mr. Kovach, doesn't that have you going right back to what was remanded from this court before, and that is simplistic mathematics with no value given to the compensatory tax doctrine in that analysis? Well, there shouldn't be any value given to the compensatory tax doctrine. This is not a Commerce Clause case. Commerce Clause cases deal with disparities between in-state and out-of-state interest that benefit the former at the expense of the latter. Justice Kagan tells us in CSX 1 that the 4R Act is concerned with disparities between railroads and other actors. In CSX 2, that gets a little refined, and the court tells us that the other actor must be similarly situated. So here we have, in this 4R Act case, we have similarly situated railroads and trucks because both of them purchase and use diesel fuel for freight transportation purposes. And both travel, I'll just throw this in so you can account for it, they both travel in interstate commerce. Sure they do. Traveling through your state and on to the next one. That's very correct, and none of the statutes at issue here in Tennessee or in CSX make any distinction between in-state and out-of-state interests. They apply without regard to that. So here we have... This is a Tennessee tax. Yes. Yes, and it implies when a railroad buys or uses fuel in Tennessee, it owes the sales tax. When a truck consumes fuel in Tennessee, it owes the motor fuel tax. It doesn't matter where they bought it or where they're going or where they're coming from. Mr. Watts, we've sort of gotten off of what my question was, and I just want to see if we can finish that and then go on to the Commerce Clause argument you're making. Assuming you're right that it's not a Commerce Clause case, assuming the compensatory tax doctrine doesn't apply, you think it's just this mathematical calculation, right? It is. We have two... Let me ask the question. All right? Now, I just want to close the loop on this idea or this concern I have about if it's just a mathematical calculation, how does the state of the railroad know in advance of the year, at the beginning of the year, whether by the end of the year what they paid is roughly equivalent? And all that I heard you say before we wandered off was that, well, there are this system of credits available, and then you said that one could pay the lesser of the two. I don't see anything in the statute that says a railroad can pay the lesser of the two, so I don't understand that. And two, are you then saying that if the railroads do pay more, we don't worry about that under the 4R Act because they can claim a credit next year? Is that what you're saying? That's one way it could be handled. You can't know completely in advance, but there's an easy administrative way to handle it, and the test is simply... I'm not really asking you is there a way it could be handled. Is there a way under which the Act was being implemented at the period in question that it was handled that meant that if one paid more by the end of the year, that's no harm, no foul? Not that I know of. Well, how can you be defending a tax that no longer exists in its current form, because you amended the statute in 2014, how can you be defending it from this period in question of 2007 to 2014 by a sort of woulda, coulda, shoulda, something that could have been done that wasn't done during the period? I don't understand that. If you look at it over the whole period of time, they want this declaratory judgment to apply all the way back to 2005. That's what their refund cases are in state court, and that's how declaratory judgment will be used here. So the question is, what is discrimination? And there has to be some reasonable period of time over which that is determined. We know when it ends in our case, which may be unique to us, but it ends on June 30, 2014. So we know all those facts. We don't have to worry about it in the future. It would be unreasonable to say if the price of fuel causes a sales tax rate to exceed 17 cents per gallon on any particular day that fuel is purchased, that that means that the whole tax regime is discriminatory under the 4R Act. It isn't. It has to be looked at over a period of time. It's a dynamic situation. But if you look at it over a reasonable period of time, which is what Judge Sharp did, he said there's simply no discrimination here. There have been times here since these. What in the Act tells you what time frame you may use? Let me just give you a little background for my concern. It seems to me that we need some sort of a coherent test that we would either employ here or direct the district court to employ, and there are a lot of moving parts. You've got the impact of the time frame itself is one moving factor. Whether there's a de minimis exception at all is one. Use of the proceeds of the tax, they argue, is one. I think BNSF suggests otherwise. Use in the state, consumption in the state as opposed to use, sales in the state as opposed to consumption or use, aren't those all moving factors? And if they are, how do you employ a test that accounts for all of those, and how do you use those various factors? First of all, use and consumption are the same thing. Railroads, however, pay when they buy in Tennessee at the pump, so they pay the sales tax on everything they buy. If they buy fuel elsewhere and burn it in Tennessee, they owe use tax for what they burn in Tennessee unless they pay the sales tax on it earlier. Your answer is telling me that there are these moving parts, and I agree with that because you have a different law governing how motor carriers pay because you have the agreement with the other states in America. But what test, in light of all those moving factors, what test do you propose if it's not the compensatory tax test? The test hasn't been worked out. That would have to be worked out what a period of time is over which you look at the overall charges. If the court goes there, I believe that has to go back to the district court. You agree, Mr. Talmadge, that this is facially discriminatory. Tennessee enacted the tax, and it's only 7% on railroads, and you have the burden to just show the justification for that. That is correct. Okay, but the test hasn't been worked out. The test hasn't been worked out precisely. In this case, we don't need to work it out because we know when the tax regime ends, and if we look at it over any reasonable period of time, we see that the trucks have been burdened more than the railroads. But I agree. Well, that begs the question. The precise test hasn't been worked out. That begs the question. You say if you look at it over any reasonable period of time, you just want it to be long enough that it comes out the way you want it to come out. Let's say a reasonable period of time is 2007 to 2014. Just accept, as a hypothetical, that is a reasonable period of time. All right? You lose, right? No. During that period? We don't know. Seven, nine, and ten, we know, as a matter of fact, that it was lower on the railroads than it was in trucks. 2008 is the first year since 1947 when the railroads paid more than the trucks did. It went for 61 years with the trucks paying more than railroads. All right, then let me change the hypothetical. Let's assume that you look at each year. You don't average this over more than one year. You don't look at it by day. You don't look at it by month, but you do look at it by discrete year. On several years, you lose, right? On several years, there is an excessive burden on the railroads, and that is why the remedy section of my brief can be important because you don't throw out the whole tax regime because of a simple disparity in a rate burden, and that's all we have is the rate. In those cases I've cited, the Kohler case, the McNamara case, Clinchfield. So your suggestion is that there is a de minimis exception for those years? Isn't the law pretty clear that there's not a de minimis exception? Well, there is in the property tax sections. Right, but not in this section. Well, it doesn't say. Well, generally the rule of statutory interpretation, if it says it in one section and doesn't say it in yours, then you don't get it. The issue is what is discrimination, and the only thing that is discrimination is an excessive burden on the party claiming to be discriminated against. That's what I'm talking about. If there's an excessive burden, the court could say if there's an excessive burden over a defined period of time, then to the extent of the excess, that is discriminatory. That could be one test. Isn't that generally what in these situations is done, is that the remedy is tailored to the problem as opposed to saying the entire tax is unconstitutional, we're done? What they say is in those areas in which discrimination occurs, we will provide a remedy which is effectively repayment of the discriminatory amount. The excess amount. And that's what's done in the property tax case. It's new ground in the property tax case. And so then you would concede that that's what should be done here? I don't concede it because we know where the end of it is, and I think you should look at it over more of a longer period of time. But that's a possible remedy. It should certainly be limited to the excess. I'm still hung up on how under your theory we affirm the district court here when you seem to freely admit the Act doesn't say, and we don't know what the proper period of time is or what the test is to apply within that proper time. So if those are givens, unless I misunderstood you, how do we affirm? If it has to be a test that determines a specific period of time rather than just looking at the overall average that the district court did, it does have to go back to work out those particulars with instructions that the remedy be limited to the actual excess burden during those periods of time that the district court finds discrimination. Well, let me throw this out to you. The time period that Judge Sharp looked at went back, what, 71 years or something like that? He didn't actually say what the time period was, but he looked at that, yes. So assuming for a second that that's what he did, when this Act that we're talking about that made discrimination unconstitutional didn't even come along for another, what, 30 or 40 years, so how would we possibly use a period of time when whatever the state did, it wasn't apparently unconstitutional? Why would you use that period of time to then justify, meaning in this case, offset the higher burden for the railroad after the statute? It simply has to be a reasonable period of time. And so defend for me, very succinctly if you would, the use of the period of time at a minimum prior to the enactment of the 4R Act. I'm not suggesting that. I'm not suggesting that. So if Sharp did that, we should send it back? Well, I think it's reasonable to look at only since the Act was enacted. So if Sharp did go back before that, we have to remand, right? I hope you don't. But in your hypothetical, yes. But you should look at it. If you look at it, those numbers are in my brief. So if we do have to remand because of that, then what period of time are you advocating and what's the rationale for that shorter period of time you're advocating? I'm out of time, but I know I have to answer your question. You don't have to do anything, but we would appreciate it. Well, I'm advocating back to, I don't want to be flippant, I'm advocating at least, it's difficult to say what a reasonable period of time is. But the point is, during ordinary circumstances, because we're already back in a situation where the trucks pay more than the railroads do, even if it's the same regime we're in force. It has to be a several-year period of time because if the state has to remit the excess when the railroad burden exceeds 17 cents per gallon, surely there should be some balance when the railroads are paying far less than 17 cents per gallon. So you don't know? There's not a clear answer to it. It has to be worked out. Thank you, that's fair. Thank you. I listened carefully to General Watson's test, and I come back, Judge Strangely, I haven't forgotten about you, and Judge McTeague, I'm going to get to your rate question. Why would Congress pass a statute that prohibits discrimination in sweeping terms, but make it harder for a railroad to defeat a facially discriminatory tax under Congress's own act than under the Constitution? We know that can't be right. Make it under the act than under the Constitution. I didn't get that. Oh, well, because he's saying all you do is look at a simple rate. You don't look at the compensatory tax doctrine. If this were a Commerce Clause case, you would go through that to see if it violates the Constitution. This is a statutory prescription, and he wants to make it easier on the state. We know that can't be right. In a way, that begs the question, because what we're trying to do is figure out what test is appropriate and how would it work. I've listed some of these moving parts that I think matter to that test. Some of them that you argue for fairly vociferously, the proceeds, appears to me under our law not to matter at all. So what time frame and what test do you propose? Is it just simply the compensatory tax doctrine? It is, and time frame gets to Judge McTeague's question. You're right. You can't guess what the rate is at the beginning. But if you use the compensatory tax doctrine, remember factor two is that the tax, under the analogy to this case, the tax on the railroads can never exceed the tax on the motor carriers. And we know it can because of Mr. Blair's affidavit that for several of these years, when you did the contrived rate, because of the price of fuel, as Judge Strach points out, that's going to change on the price of fuel, it sometimes did exceed. So you don't worry about what period we look at and what is it the first of the year. Because if you're using the compensatory tax doctrine, factor two fails because the tax can exceed, and this record shows that, in fact, it does. So if I get this right, what you seem to be saying is that because you can't predict in advance whether the tax will have ended up being higher on the railroads, that's the state's problem. It's not your problem. So they simply can't have a system designed that way because you can't figure it out in advance. And so if they do it, they run the risk of every year you being able to challenge it because by the end of the year you say you paid more. Is that basically the bottom line? Yes. And what a ridiculous thing. So if I'm right about that, and now this does not affect this case. I'm just curious. The statute got changed in 2014. I don't think anybody's told us the manner in which it got changed because presumably it doesn't matter to the outcome of this case. But is there still this same type of regime after 2014, or did they abandon this method? No, the sales tax was repealed, which, if I can, gets me to Judge Stranz's question. The BN Tennessee case is under the new regime, Judge McKee. Is that a per-gallon tax? It's a per-gallon tax. But you're challenging that one too. Well, yes, but on a different ground. So under your theory then, unless you just set the sales tax at some really, really low number compared to the per-gallon tax, the state will always run the risk of violating the act under the old regime. Because we know that the rate can exceed on the railroads based on the price of fuel. And then we're back to the remedy, though. You're not arguing that the tax is completely violative and all of the money should be refunded to you that you ever paid, correct? We are arguing that. We are arguing that the tax is facially discriminatory. They have not submitted a sufficient justification for that disparate treatment. That enjoins the tax, Judge Stranz. So across the entire time of its existence? Well, we're only talking about the past few years anyway and going forward. Why wouldn't you get back what you paid that exceeded what the truckers pay? Because they're not the same taxes, Judge McKee. I hadn't had time to explain that. They're not the same taxes. They're taxes on different events. They're taxes based on a totally different premise. The purchase price versus the way the trucks are taxed, not on what they buy in Tennessee, but what they use in Tennessee. They're just completely different taxes. And if I could, can I answer Judge Stranz's question about? Yes, because I have one more. About being in Tennessee. And being in Tennessee because it wasn't a sales tax. Oh, I'm sorry, Judge Cook. No, you're good. Okay. It wasn't a sales tax that they were comparing. After the state enacted a new cents per gallon tax, and we challenged it. It was a preliminary injunction hearing without any record. And the court said, the panel said, well, now we're talking about the same tax. And if you're talking about the same tax, we're not going to look at how the proceeds were spent. They were not doing a roughly equivalent analysis. They had no reason to talk about that. They cite CSXT, too, but only for the proposition of the comparison class, which is not an issue here. So, Judge Stranz, that analysis doesn't apply here because the court, we think erroneously, but the court viewed the tax as now being the same tax on both entities. All right. In fairness, your time is up. Yes. May I ask one more question? I don't know. In fairness, I think not. We'll move on then. Okay. Thank you. All right. I'll thank the panel. Okay. You may call the next case.